FILED
2026 Apr-02  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **RONALD STROZIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **7:24-cv-1452-EGL** |
| | ) | |
| **WINN-DIXIE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

On October 25, 2024, Ronald Strozier sued Winn-Dixie. *See* Doc. 1. Winn-Dixie now moves for summary judgment. Doc. 30. For the reasons below, the motion is **GRANTED**.

## BACKGROUND

On June 24, 2021, Strozier began work as a seasonal front-end associate at Winn-Dixie Store 407. Doc. 30 at 5; Doc. 33 at 4. Conflict arose almost immediately. Strozier clashed with several coworkers, Doc. 30 at ¶9; Doc. 33 at 4, and consequently was transferred in May 2022 to Store 479, which was managed by Randall Curt Lay. Doc. 30 at ¶¶11-12; Doc. 33 at 4. Strozier worked in the deli alongside Linda Jordan and Debrah Hager. Doc. 30 at ¶14; Doc. 33 at 4.

The conflicts continued. That month, Strozier and store leadership reported a dispute to Human Resources Business Partner Alishia Lindsey after Strozier was

accused of making a veiled threat of violence. Doc. 30 at ¶18-19; Doc. 33 at 4.[1]

Lindsey investigated, determined that it was a miscommunication, and counseled

Strozier on communication and professionalism. Doc. 30 at ¶20; Doc. 33 at 4. The

matter ended without formal discipline. *Id.*

On December 29, 2022, Strozier again clashed with coworkers, this time in a

dispute with cake decorator Raven Robinson. Doc. 30 at ¶22; Doc. 33 at 4. One

witness said Strozier accused Robinson of begging for money; another said he

threatened her job. Doc. 30 at ¶¶24-25; Doc. 33 at 4. Linda Jordan reported that

Strozier became "loud" and told Robinson "not to worry about his business because

he had people." Doc. 30 at ¶26; Doc. 33 at 4. Jordan noted it was his second

confrontation in two weeks and that many employees viewed him as creating a

hostile work environment. *Id.* Keire Lewis reported that Strozier, to threaten

Robinson, "threw gang signs" and said he had "people to call." Doc. 30 at ¶27; Doc.

33 at 4.

Another conflict arose on January 11, 2023, between Strozier and Keire

Lewis. Strozier tried to photograph Lewis's shoes because he believed they violated

the store's dress code. Doc. 30 at ¶¶31-32; Doc. 33 at 4. Robinson saw him and

---

[1] Strozier disputes that this was a veiled threat of violence but does not dispute that it was interpreted as such by those who heard it. *See* Doc. 33 at 4; Doc. 23 at 62.

alerted Lewis, who yelled at Strozier and called him a "son of a bitch." Doc. 30 at ¶34; Doc. 33 at 4.

Strozier responded: "Y'all better go on because you don't know who you messing with," and "You need to leave me alone because you don't know me." Doc. 30 at ¶35; Doc. 33 at 4. Store manager Randall Lay arrived and saw Strozier and Lewis arguing loudly. Doc. 30 at ¶¶36-37; Doc. 33 at 4. Lay told both to calm down and stop yelling. Doc. 30 at ¶38; Doc. 33 at 4. Strozier refused—twice—and Lay sent him home. Doc. 30 at ¶¶42-44; Doc. 33 at 4-5.

After the incident, Lay decided that same day Strozier needed to be terminated and promptly notified HRBP Lindsey. Doc. 30 at ¶¶45-47; Doc. 33 at 5. Lindsey agreed. Doc. 30 at ¶¶48-50; Doc. 33 at 5.

The next morning, Lay informed Strozier that he was terminated. Doc. 30 at ¶¶51-52; Doc. 33 at 5. Strozier replied, "It was nice working with you guys." Doc. 30 at ¶53; Doc. 33 at 5. He later admitted he had been "happy" at Store 479 and acknowledged his insubordination warranted discipline, but argued termination was too severe and lesser discipline was appropriate. Doc. 30 at ¶¶54, 65; Doc. 33 at 5. He then went home and told his wife that he had been fired for "talking loudly." Doc. 30 at ¶56; Doc. 33 at 5.

Strozier alleges that his coworkers Linda Jordan and Debrah Hager sexually harassed him at Store 479. Doc. 30 at ¶64; Doc. 33 at 5. He claims Jordan once

placed a hot dog between her legs and said she "wish[ed] [her] man had one of these." Doc. 33 at 9. On another occasion, she said she "d[oes] not spit" and instead "swallows everything." *Id.* He further alleges that Jordan stared at him while rubbing a hot dog and she once asked him to perform sex acts on himself while filming it. *Id.* at 9-10.

Strozier alleges that Hager also made sexual comments. A female coworker told Strozier that Hager wanted to "get with him." *Id.* Hager also allegedly showed Strozier a picture of her brother-in-law's genitals and discussed her husband's inability to "get it up," repeating similar comments about their sex life. *Id.* at 10-11.

Strozier states he reported this conduct to multiple managers, but no action was taken. *Id.* at 9-11.

On May 3, 2023, Strozier filed a charge of discrimination against Winn-Dixie with the Equal Employment Opportunity Commission. Doc. 23-14 at 1. And on October 25, 2024, he filed this action, raising seven claims: (1) sexual harassment in violation of Title VII; (2) retaliatory termination for protected Title VII activities; (3) invasion of privacy; (4) negligent and/or wanton supervision; (5) negligent and/or wanton training; (6) negligent and/or wanton retention; and (7) outrage. Doc. 1 at 6-14. Strozier, however, agreed in writing to drop all claims except for his sexual harassment and retaliation claims. Doc. 30 at 1 n.1.

4

Winn-Dixie now seeks summary judgment on those remaining claims. *See generally* Doc. 30.

## STANDARD

Summary judgment is appropriate when the facts, properly supported by the record and taken in the light most favorable to the nonmovant, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And one is "material" if it is an element of the underlying claim that might affect the case's outcome. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The movant may discharge its burden by pointing out to the district court that there is no evidence supporting an essential element of the nonmovant's case. *Id.* at 325. The district court must view the evidence and all factual inferences in the light most favorable to the nonmovant. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmovant then must show that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986). If the record would not permit a rational trier of fact to find for the nonmovant, then there is no genuine dispute for trial. *Id.* All reasonable doubts, however, are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

### DISCUSSION

Winn-Dixie moves for summary judgment, arguing that it is entitled to judgment as a matter of law on each of Strozier's remaining claims. Doc. 30 at 17-31. Strozier counters that he has produced sufficient evidence to sustain his claims. Doc. 33 at 19-29. These arguments are considered in turn.

### I.    Hostile Work Environment Sexual Harassment

Strozier claims he was subjected to hostile work environment sexual harassment. *See* Doc. 1 at 6-8.

"Title VII prohibits 'hostile work environment' sexual harassment." *Dar Dar v. Associated Outdoor Club, Inc.*, 201 F. App'x 718, 721 (11th Cir. 2006). To establish a hostile work environment claim arising out of sexual harassment under Title VII, a plaintiff must show that he (1) belongs to a protected group; (2) experienced unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter employment conditions; and (5) a basis for employer liability. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc).

Winn-Dixie claims that Strozier has failed to show that the alleged harassment was severe or pervasive enough to alter the terms and conditions of his employment, and that he cannot demonstrate Winn-Dixie's liability for the alleged harassment. Doc. 30 at 17-23.

To establish a hostile work environment, a plaintiff must show harassment that is both subjectively and objectively severe or pervasive. *Mendoza*, 195 F.3d at 1246. The objective inquiry depends on examining the totality of the circumstances. *Id.*; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Those circumstances are considered through four factors: (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, rather than merely offensive; and (4) whether it unreasonably interfered with the employee's job performance. *Harris*, 510 U.S. at 23.

Strozier's harassment was neither severe nor pervasive. He was never touched or threatened, was not subjected to quid pro quo demands, and offers no evidence that the conduct impaired his work. He even, at times, participated in the offensive banter. *See* Doc. 30 at ¶69; Doc. 33 at 9. Though being propositioned, shown pictures of male genitalia, and subjected to a handful of euphemistic remarks over several months is certainly offensive and annoying, those acts are less severe or pervasive than harassment that the Eleventh Circuit has rejected as insufficient to meet the standard for a hostile work environment. For example, in *Leeth v. Tyson Foods, Inc.*,

449 F. App'x 849, 851-53 (11th Cir. 2011), the court affirmed summary judgment where a supervisor tried to pull the plaintiff onto his lap, commented that he wanted to "ram his tongue down her throat," visited her home uninvited, and repeatedly asked her out and propositioned her. And in *Lockett v. Choice Hotels Int'l, Inc.*, 315 F. App'x 862, 863-65 (11th Cir. 2009), the court affirmed summary judgment despite repeated sexual comments over months, such as talking "about sexual positions, that he would lick her 'p-u-s-s-y', that 'he would go down on [her] good,' that her boyfriend 'aint F'ing [her] right,' and that she needed to 'get with a real guy,'" as well as repeated attempts to hug her, and a single instance of touching her buttocks.[2]

Even if a jury concluded that everything Strozier describes occurred, that evidence would be insufficiently severe or pervasive to sustain a sexual harassment hostile work environment claim under Title VII. Because Strozier's claim fails as a

---

[2] *See also, e.g.*, *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 804-05, 807 (11th Cir. 2012) (describing harassment, which included grabbing the plaintiff's buttocks, expressing a desire to "f—— her," "'lick' her 'all over,'" "be her first black," "lick her ass," and "eat her p——y," among other things, to be "rude and boorish, but fall[ing] short of ... severe and pervasive harassment necessary to support [a hostile work environment] claim"); *Cusatis v. Atl. Waste Servs., Inc.*, No. 4:22-CV-156, 2024 WL 1258210, at *2 (S.D. Ga. Mar. 25, 2024) (holding that conduct was not objectively severe or pervasive where employee was asked if she had sex with her cousin, repeatedly asked about her sexuality, and a manager attempted to grab and kiss her), *aff'd*, No. 24-11378, 2025 WL 3101384 (11th Cir. Nov. 6, 2025); *cf. Breda v. Wolf Camera, Inc.*, 148 F. Supp. 2d 1371, 1381 (S.D. Ga. 2001) ("[M]erely inserting every last rude or sexualized comment/gesture/joke into a lengthy list accumulated over years of employment does not … a Title VII claim make."); *but see Parker v. Atlanta Newspapers Name Holding Corp.*, No. 05-15722, 2006 WL 1594427, *3 (11th Cir. June 12, 2006) (holding that conduct was frequent where plaintiff endured unwelcome comments "every single time she was at work" for several months).

matter of law on that ground, the Court need not address his attempt to establish a basis for Winn-Dixie's liability, and summary judgment is warranted in Winn-Dixie's favor.

## II.    Title VII Retaliation

Winn-Dixie argues that Strozier's retaliation claim fails because the decision to fire him was made and approved before any protected activity occurred, and because Winn-Dixie had legitimate, non-retaliatory reasons for his termination that he cannot show was pretextual. Doc. 30 at 26. Strozier responds by pointing out that he was fired a day after his final complaint about sexual harassment, and that he had repeatedly complained about it throughout his employment. Doc. 33 at 24-28. He also points to his testimony that, during the meeting where he was fired, the manager firing him mentioned his complaints. *Id.* at 28.

To establish a claim of retaliation, a plaintiff must prove by a preponderance of the evidence that he (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) causality. *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

Strozier's complaints undoubtedly were statutorily protected activities: Title VII protects opposition to sexual harassment, and Strozier's complaints about such harassment were opposition to it. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009). And he certainly suffered an adverse

employment action when he was fired. The sole contested element, then, is causality: Was Lay's decision to fire Strozier caused by his complaints about sexual harassment? Winn-Dixie denies that and instead claims that he was fired because of his insubordination on January 11, the day before his termination. *See* Doc. 30 at ¶¶44-45. Because Winn-Dixie has articulated a legitimate nondiscriminatory reason for his firing, Strozier needed to demonstrate pretext, coming forward with evidence showing that his complaints were a "but-for cause" of his firing. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1338 (11th Cir. 2023). In other words, he needed to show that "had [he] not complained, [he] would not have been fired." *Id.* (quoting *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)).

There is no evidence that Randall Curt Lay knew about his complaints before deciding to fire Strozier.[3] And though Strozier's testimony indicates that Lay learned about those complaints after speaking with HR about his decision—Lay even mentioned them during his termination meeting with Strozier[4]—that does not overcome the legitimate reason given for his termination: "Though available for Title VII discrimination claims, it is well-established that the mixed-motive framework does not apply to Title VII retaliation claims." *Yelling*, 82 F.4th at 1338.

---

[3] Though Strozier states that he repeatedly complained about harassment to managers other than Lay, *see* Doc. 33 at ¶¶26, 28, 36, 42, 56, there is no evidence that such complaints ever reached Lay before he made the decision to fire Strozier. And though that fact alone suffices to defeat but-for causation, the Court notes that there is no evidence Strozier was ever subjected to an adverse employment action by any other managers following those repeated complaints.

[4] *See* Doc. 33 at ¶72.

10

Strozier cites little evidence "beyond mere temporal proximity indicating retaliatory intent." *Id.* at 1342. And here, such proximity cuts against him: his termination was only a day after his insubordination. *See* Doc. 30 at ¶¶31-38, 42-46, 51-52; Doc. 33 at 4-5. Though he concedes that he deserved discipline, he claims that he was treated more severely than other employees involved in the January 11 conflict because of his complaints about sexual harassment. *See* Doc. 23 at 88-89; Doc. 33 at ¶73. But that comparison is inapposite. Though each employee involved in that conflict was guilty of indecorousness, Strozier alone flagrantly refused to comply with an order to stop. *See* Doc. 23 at 74-75.

Strozier could have met his burden had he come forward with some evidence that his complaints *caused* him to be fired instead of merely disciplined, but he does not. *Yelling*, 82 F.4th at 1338; *see also generally* Doc. 33. Given that absence, there is insufficient evidence for a jury to determine that Strozier's complaints were a but-for cause of his termination. Accordingly, summary judgment is warranted in Winn-Dixie's favor on this claim.

11

## CONCLUSION

Winn-Dixie's Motion for Summary Judgment (Doc. 30) is **GRANTED**. Finding no genuine dispute of material fact, the Court **HOLDS** that Strozier has failed to produce evidence sufficient to sustain his claims for sexual harassment hostile work environment and Title VII retaliation. Accordingly, the Court **GRANTS** summary judgment on those claims in Winn-Dixie's favor. And because Strozier agreed to drop his state-law claims, the Court **DISMISSES** his claims for invasion of privacy, negligent and/or wanton supervision, negligent and/or wanton training, negligent and/or wanton retention, and outrage. *See* Doc. 30 at 1 n.1.

    **DONE** and **ORDERED** this 2nd day of April, 2026.

                    **EDMUND G. LACOUR JR.**
                    UNITED STATES DISTRICT JUDGE